FILED
2013 Jun-25 PM 02:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

**LAROY GRIMMETT, SR.,**
**Plaintiff,**

**v.** **CASE NO.: CV-11-BE-3594-S**

**STATE OF ALABAMA DEPARTMENT OF CORRECTIONS,**
**Defendant**

# MEMORANDUM OPINION

This matter – asserting claims of sexually hostile work environment, religious discrimination, and retaliation based on complaints of sexual harassment, all brought pursuant to Title VII – is before the court on "Defendant's Motion for Summary Judgment." (Doc. 19). For the reasons stated in this Memorandum Opinion, the court FINDS that the motion for summary judgment is due to be GRANTED IN PART and DENIED IN PART: the court will deny the motion as to the hostile work environment claim based on sexual harassment at the Donaldson facility; grant it as to the hostile work environment claim based on religious harassment; and grant in part and deny in part the motion as to the retaliation claims.

## I. PROCEDURAL HISTORY

The Plaintiff, Laroy Grimmett, Senior, filed this action *pro se*, asserting claims of employment discrimination against his employer, the State of Alabama Department of Corrections (ADOC), attaching an EEOC Charge (doc. 1-1). His Complaint was also accompanied by a motion to appoint counsel and a motion for leave to proceed *in forma pauperis*. The court

allowed Grimmett to file the Complaint with only partial fee payment, and it denied his request for appointment of an attorney, but required him to file an Amended Complaint complying with the Federal Rules of Civil Procedure. (Doc. 2). Grimmett timely filed an Amended Complaint, asserting claims of harassment based on his sex and religion, and retaliation (doc. 4).

On January 11, 2013, the ADOC filed a motion for summary judgment (doc. 19), and subsequently, a brief supporting that motion (doc. 21). Grimmett's response to the motion (doc. 23) included a "fact" narrative of four incidents that allegedly occurred during his employment, with no submission of affidavits or declarations and no specific reference to evidence of record supporting that narrative or to case law. The court entered an Order (doc. 24) giving Grimmett, as a *pro se* litigant, "notice of the summary judgment rules, of his right to file affidavits or other materials in opposition to the motion, and of the consequences of default" pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *Somerville v. Hall*, 2 F.3d 1563, 1564 (11th Cir. 1993) (per curiam) (ruling on a motion that – unlike the instant case – was originally filed as a motion to dismiss and that the court converted into a motion for summary judgment) (quoting *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985)). In that Order, the court gave Grimmett another opportunity to file a response to the motion for summary judgment and supporting brief by the deadline of February 13, 2013. Grimmett subsequently filed a timely second response (doc. 25), which again included no submission of affidavits or declarations under penalty of perjury and no reference to evidence of record supporting his fact narrative and no reference to case law. The ADOC filed a reply (doc. 26). After the deadline for a response, Grimmett filed a sur-reply (doc. 27), that included no submission of affidavits or declarations under penalty of perjury, no specific reference to evidence of record supporting his fact narrative, and no reference to case law.

Grimmett's sur-reply did refer to other incidents of sexual harassment involving other victims and law enforcement officials, incidents he had read about in the news or had heard about generally; however, he referred to no case law addressing harassment cases brought under Title VII or § 1981.

## II. STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) Substantive law determines which facts are material and which are irrelevant. *Id*. at 248. In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). "The non-moving party need not present evidence in a form admissible at trial; however, he may not merely rest on his pleadings." *Graham v. State Farm Mut. Ins.* Co., 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Celotex,* 477 U.S. at 324). If he does, or if the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).

The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Even if a district court "'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (*quoting Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)). The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

## III. FACTS

The court notes that the ADOC's motion for summary judgment listed undisputed facts and its brief reiterated those facts. Although Grimmett filed a response (doc. 23) and a sur-reply (doc. 27), he did not file any further *evidence* opposing summary judgment nor did his response

and sur-reply specifically refer to evidence that the Defendant had filed with docket number sites for the location of that evidence. However, the ADOC filed Grimmett's deposition testimony as part of its evidentiary submission, and to the extent that his deposition testimony – which the court has read – disputes the facts that the ADOC's brief presents, or the ADOC's characterization of those facts, the court views those facts in the light most favorable to Grimmett. *See Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179, 1185 (11th Cir. 2002).

The Plaintiff, Laroy Grimmett, Sr., is a fifty-three year old African-American male of Pentacostal religion who obtained over twenty years of experience in the food preparation industry, including taking food preparation courses at a local community college in the early 1970s. He began working for the ADOC on June 1, 2010 in the position of "Steward I," supervising and overseeing the preparation of food for inmates. Grimmett has held the same position and received the same pay throughout his tenure with the department.

**A. Facts Regarding Hostile Work Environment**

*St. Clair Correctional Facility*

Grimmett's first job with the ADOC was at the St. Clair Correctional Facility, a facility with all-male inmates located in Springville, approximately a half hour northeast of Birmingham. Grimmett testified that he drove approximately an hour everyday from his home when he worked at that facility. He worked there for four-and-a-half months and claims that the following incidents of discrimination occurred during those months.

(1) *Alleged Sexual Harassment*

*a. Inappropriate Conversation in August of 2010*

In August of 2010, Grimmett heard the following lunch conversation in the stewards' office that occurred between Tywanna Baker, another steward, and the chief steward who supervised Grimmett, Wilma Mitchell:

> Baker: I am used to dick. Dicks don't bother me.
>
> Mitchell: Girl, I know what you mean. . . because I have had big dicks, medium dicks, small dicks, black dicks, and had some white dicks, too.

Grimmett acknowledges that these remarks were not directed at him, but considered the conversation in his presence to be unprofessional and to constitute sexual harassment.

*b. Inappropriate Comments to Grimmett*

During Grimmett's tenure at St. Clair, his supervisor, Ms. Mitchell, would often make a remark to him to this effect: "Just because there's snow on the roof, Mr. Grimmett, doesn't mean that there's no fire in the furnace." Grimmett took this comment to mean that just because a person is older does not mean that he or she is no longer sexually active. The first time Mitchell made this remark to Grimmett was in September of 2010 in Mitchell's office in the presence of an inmate. However, Grimmett testified that Mitchell began making this remark to him constantly, practically on a daily basis.

*c. Inappropriate Bumping and Related Comment*

In late October of 2010, Grimmett and some inmates were setting up the cafeteria serving line when Grimmett noticed Mitchell standing so closely behind him that she "lay her breasts up on [him]." The way Grimmett described the touching, Mitchell did not brush up against him and

then immediately move away, as a person does when she inadvertently bumps someone else. Instead, Grimmett – not Mitchell -- jumped away, and rather than apologizing, Mitchell responded, "Why you jumped, Mr. Grimmett? You never had big titties on you before?" Grimmett testified that this touching made him feel "violated" because the touching was inappropriate by anyone other than his wife of twenty years. This incident is the only one where any "touching" occurred involving Grimmett. Grimmett did not report this incident to Assistant Warden Joseph Headley or any other prison management official and did not mention it in his EEOC Complaint.

*d. Further Inappropriate Comment to Grimmett*

After the bumping incident, Mitchell looked at Grimmett up and down, stating, "Mmm mmm Mr. Grimmett, you something else," with a tone indicating that the comment had a sexual meaning. Grimmett did not report this incident to prison management, either.

*(2) Alleged Religious Harassment*

Grimmett had a habit of making comments such as "Thank God" or "God willing," and on numerous occasions Mitchell would respond with a comment like "God has nothing to do with this or that." Grimmett would then state, "I'm going to thank God regardless" or "No one, and I mean no one, can tell me to stop thanking God."

*(3) Reporting of Incidents at St. Clair*

On or about August 15, 2010, Grimmett told Assistant Warden Headley, that he felt he was the victim of harassment in the kitchen area. Headley told Grimmett he would handle the situation and performed a preliminary investigation.

As part of the preliminary investigation, Headley discussed the complaint with the kitchen staff, who did not support Grimmett's claims of sexual or religious harassment. Headley also asked Grimmett to put his complaints in writing, and Grimmett provided a 24-page written complaint to Headley in September of 2010, which included the conversation between Baker and Mitchell as well as the "fire in the furnace" comments and Mitchell's remarks about God but did not include the bumping incident or the "Mmm mmm" comment, because those incidents had not yet occurred. Headley passed the written complaint along to Warden Davenport on or about October 18, 2010, and Davenport then made a formal request for an investigation to ADOC's Intelligence and Investigations Division.

Grimmett did not subsequently report the bumping incident and the "Mmm mmm" comment, and testified that he did not do so because he had already reported Mitchell's other harassment and saw no discipline or other result from that reporting.

On October 22, 2010, the ADOC transferred Grimmett to Donaldson Correctional Facility, which was closer to Grimmett's home in Birmingham, and gave him a position there at the same job description, rank and pay grade as he held at the St. Clair facility. According to the ADOC, the transfer occurred as a protection to Grimmett during the pendency of the investigation of his complaints. Grimmett did not request or desire the transfer.

Investigator M.C. Smith performed a formal investigation of Grimmett's complaints of harassment at the St. Clair facility, including tape recorded interviews of seven witnesses, and produced a written report. In a report dated November 9, 2010 and included in the record of this case, he concluded that "[t]he investigation did not reveal any evidence or witnesses to substantiate Steward Grimmett's complaint that his boss, Steward Mitchell, has been constantly

harassing him, including sexual, because she wants to date him." (Doc. 19-6, at 3). The report also indicated that Grimmett had been interviewed after his transfer to the Donaldson facility and Grimmett stated in that interview that he was not happy at the new facility.

*Donaldson Correctional Facility*

In October 2010, Grimmett began working at the Donaldson Correctional Facility, a maximum security prison in Bessemer, Alabama, approximately a half hour west of Birmingham. Grimmett testified that the Donaldson facility was located approximately forty-five minutes from his home, about fifteen minutes closer than the St. Clair facility. However, Donaldson is a higher security prison than St. Clair, and Grimmett testified that he did not want to transfer to Donaldson because he liked working with the people at St. Clair except for supervisor Mitchell. Grimmett worked at the Donaldson facility for approximately one year.

When Grimmett arrived at the facility, his supervisor, Alleric Holt, a male, informed him that he had heard about the problems between Grimmett and Mitchell and did not like that situation. Holt did not further explain why he did not like it; however, Holt also advised Grimmett that he had trained Mitchell and that she had been his best and favorite steward. Subsequently, Holt began on-going harassment of Grimmett, which Grimmett characterized as "torment," calling him nick-names such as "playa," "pimp," "slick," "sissy," "bitch" or "boy," even though Holt called all of the other stewards by their real names. When Grimmett complained to Holt, asking Holt to give him the same respect that Grimmett gave Holt by calling him the name on his nametag, Holt responded that Grimmett *was* his boy. When Grimmett told him, "I'm not your boy," Holt disagreed, saying that as long as Grimmett worked under him, Grimmett was his boy. Grimmett testified that he understood Holt meant by using the term "boy"

the same meaning as the inmates used, particularly in light of the other names Holt used of "sissy," "bitch," etc.: it was a reference to Grimmett's being Holt's gay lover, which was not true and which Grimmett did not want to become true.

Because the name-calling was an on-going problem, Ms. Carnathan, another steward who supervised Grimmett, heard Holt calling Grimmett those names. Grimmett complained to Holt about his name-calling in Carnathan's presence.

To further support Grimmett's understanding, Grimmett heard from several sources – inmates and another steward who supervised Grimmett, Ms.Carnathan – that Holt was spreading rumors that Grimmett was gay. Grimmett did not personally hear Holt tell anyone else that Grimmett was gay in Grimmett's presence. According to Grimmett, this rumor affected the way the inmates treated Grimmett, because after the rumor began circulating, the inmates stopped treating him with respect.

*Reporting Grievances at Donaldson*

Eventually, Grimmett and Holt ended up in the Warden's office, and the Warden asked Holt whether he called Grimmett such names. Holt denied the name-calling, so the Warden called Ms. Carnathan to ask her whether she had indeed witnessed the name-calling. Although Grimmett could not hear Carnathan's side of the phone conversation, the Warden advised him that Carnathan had confirmed the name-calling, and the Warden told Grimmett to put his complaint in writing. The Warden advised Grimmett and Holt that if the two of them could not resolve the problem between them and an altercation resulted, the Warden would fire both of them.

In January of 2011, Grimmett first filed a written grievance about Holt's actions to Warden Hetzel and asked to be transferred. Grimmett filed another grievance in April of 2011 to the same effect. According to a May 13, 2011 letter from Hetzel to Grimmett regarding the transfer request, Assistant Warden Gordy investigated Grimmett's complaints about Holt and found them to be unjustified. The evidence presented to the court does not include any investigative report from the Donaldson facility regarding Grimmett's complaints, although it does include such a report from the St. Clair facility. Hetzel denied Grimmett's request to transfer on May 13, 2011. About that time, Warden Hetzel transferred out of Donaldson and Warden Cheryl Price transferred in. Grimmett advised Warden Price of his problems with Holt, and Price asked Grimmett to be patient because Holt would be retiring soon. However, Grimmett explained to Price that even if Holt retired, the rumors Holt had supposedly spread about him at Donaldson made Grimmett's name "mud," and made Grimmett's staying there infeasible.

*Alex City Work Release Center*

Although Hetzel denied Grimmett's request for a transfer, Grimmett later applied for and received a job as steward at the Alex City Work Release Center. He sent a letter dated August 31, 2011 requesting the transfer, which the Commissioner granted on September 7, 2011. Grimmett began working in Alex City on October 1, 2011, and he continues to work there. Alex City is located approximately an hour and a half from Birmingham, and Grimmett testified that Alex City is further to drive than the Donaldson facility. He has not experienced any incidents of sexual or religious harassment at the Alex City facility, and he is happy working there, although

the drive is farther from his home in Birmingham. He does not wish to be transferred back to St. Clair or Donaldson, although those other facilities are closer to his home in Birmingham.

**B. Additional Facts Regarding Retaliation**

Grimmett testified that any write-ups or reprimands he received were not related to his claims of sexual harassment. As for his job performance ratings, he received a 20/36 at both St. Clair and Donaldson and received a 24/36 at the Alex City facility. He also acknowledged in his deposition that his work hours have remained consistent with the various transfers, as have his position and pay, so he has lost no pay as a result of the alleged harassment (doc. 19-3, at 217).

Although Grimmett requested the transfers away from St. Clair and Donaldson, he did so get out from under supervisors that were allegedly sexually harassing him. He enjoys his current work in Alex City, but that job is significantly farther from home than his positions at St. Clair and Donaldson.

**C. EEOC Charge**

In a document with an EEOC department receipt date of February 12, 20112, Grimmett filed an EEOC charge for discrimination based on sex, religion, and retaliation. In the narrative paragraph of that charge, Grimmett states in relevant part as follows:

> I am a male of Pentecostal religion.. . .From the time I was hired, I started being subjected to sexual harassment by my supervisor. I reported it to the Warden [] but only started receiving unwarranted disciplinary actions for failing to acquiesce to the sexual harassment. The environment became even more hostile in that I was told that I could not pray or say the Lord's name in the presence of my supervisor. The supervisor made all manner of offensive remarks to me about her sexual exploits. In October 2010, I was transferred temporarily from the facility I was originally placed to another facility while an investigation was being conducted. My supervisor at this facility was a friend of my former supervisor and made sure I knew it. The hostile work environment continued at this with him calling me offensive names such as pimp, my boy and others. I reported this

> conduct as well. I was told that I would be transferred in a couple of weeks to my original location because of the treatment I was receiving at this facility. To date, February 1, 2011, I have not been transferred.

(Doc. 1-1, at 1).

## IV. DISCUSSION

In his Complaint, Grimmett asserts claims under Title VII for sexually hostile work environment, religious discrimination, and retaliation after he complained of a sexually hostile work environment. The court will address each claim separately.

### A. Sexually Hostile Work Environment

Grimmett claims that the ADOC created a sexually hostile work environment at both the St. Clair and Donalson facilities. That framework first requires a plaintiff to prove a *prima facie* case of discrimination. To establish a claim for a sexual harassment/sexually hostile work environment Grimmett must establish the following elements:

> (1) that he [] belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). The ADOC asserts that Grimmett has failed to meet his *prima facie* case because he has not presented evidence establishing the fourth and fifth elements listed above. The court FINDS that Grimmett has established his *prima facie* case for the reasons stated below.

The evidence presented establishes the first three elements of a sexually hostile work environment *prima facie* case, and the ADOC does not argue otherwise in its brief. Rather, it focuses on the fourth element, which generally presents the key issue and crucial analysis in most sexual harassment cases: whether the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment.

The evidence presented shows a number of incidents of alleged sexual harassment: (1) the overheard conversation at St. Clair and its reference to penises; (2) Mitchell's almost daily remark to Grimmett at St. Clair about "fire in the furnace"; (3) Mitchell's single touching incident at St. Clair; (4) Mitchell's "Mmm mmm" remark to Grimmett at St. Clair; (4) Holt's repeated remarks at Donaldson to Grimmett that he was his "boy" and "sissy bitch" with attendant rumors circulating around Donaldson that Grimmett was gay.

The court notes the fourth incident, which was not a single incident but on-going abuse during Grimmett's tenure, occurred at the Donaldson facility. The section of the ADOC's brief that discusses sexual harassment completely ignores the alleged abuse occurring at the Donaldson facility and focuses entirely on the incidents at the St. Clair facility. The court finds that this focus is misplaced, because alleged incidents of sexual harassment also occurred at the Donaldson facility and because the ADOC was Grimmett's employer at both facilities.

The genesis of this misplaced focus is perhaps Grimmett's deposition testimony. In that testimony, Grimmett clearly stated that his supervisor at Donaldson harassed him. He also clearly stated that the harassment involved his supervisor "tormenting" him with remarks, among others, about Grimmett being his "boy" which, in the prison context where they worked, had the meaning of "gay lover." So, Grimmett was very specific that the harassment was sexual in

nature. However, in the deposition, Grimmett, who is *pro se* and who is not a lawyer, characterized that harassment as "general harassment" not "sexual harassment." But, given the obvious sexual nature of the harassment, the *pro se* Plaintiff's misuse and misunderstanding of legal terms does not mean that counsel for the ADOC and this court can ignore those incidents and take advantage of Grimmett's ignorance of legal terms and the legal system. The court must, at this summary judgment stage, view the facts in the light most favorable to Mr. Grimmett, as non-movant, and while Mr. Grimmett's lack of legal expertise renders him less than articulate, the facts stated in his deposition testimony speak for themselves. The court will not and cannot ignore them.

The court must determine whether the evidence presented – including the evidence of alleged verbal sexual harassment at the Donaldson facility – establishes the fourth element as a matter of law. In making such a determination, the court must use "common sense," keeping in mind the "social context, to distinguish between general office vulgarity and the conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 811 (11th Cir. 2010) (en banc) (quotations omitted). Similarly, the court acknowledges the Eleventh Circuit's direction that "Title VII is not a general civility code." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006). Title VII does not provide a vehicle for employees to complain about "ordinary workplace tribulations," *id.*, or for employees to air in court their personal feuds, *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986). Rather, it is designed to provide a vehicle to complain about harassment or discriminatory abuse that is so severe that it changes the workplace conditions.

Further, as the Supreme Court of the United States pointed out in *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 456 (2006), when a court addresses allegedly abusive comments and attempts to evaluate the severity of them, "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage" and the totality of that information is not always available to a court at the summary judgment stage, where evidence is confined to depositions, etc. The "severe or pervasive" requirement includes both objective and subjective components, and thus, the harassing "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002).

The court acknowledges that the instant case is a close one. The case does involve alleged abusive sexual harassment at two different ADOC facilities by two different supervisors, and the harassment was pervasive at both facilities, with at least the offensive verbal harassment occurring repeatedly on an almost daily basis at both locations. However, it involves only one touching incident, which occurred at the St. Clair facility. And, Grimmett did not report the touching incident to the St. Clair facility Warden, as he reported other matters, saying he felt that reporting was futile because he had made a prior report. Further, the management at the St. Clair facility did acknowledge and address Grimmett's complaints, performing a detailed investigation of those complaints, moving Grimmett away from the supervisor who allegedly harassed him, and filing an investigative report.

Grimmett's allegations of sexual harassment at Donalson are more troubling. His supervisor there, Holt, acknowledged his awareness of the problems at the first facility, making a

point to discuss those problems with Grimmett and to point out Holt's close relationship with the prior supervisor whom Grimmett had accused of misconduct.

The court notes as well that Grimmett's workplace is not an ordinary business; it is a prison facility, and the prison context is important, particularly in light of the alleged repeated statements of Holt's harassing Grimmett at the Donaldson facility. Holt's alleged conduct would be annoying in any context but when the specific words he threw at Grimmett are placed in the all-male maximum security prison context – referencing Holt's sexual dominance over Grimmett – added to the fact that Holt had supervisory control over Grimmett, the comments could morph from offensive words into sexual threats and torment. Further, Grimmett was surrounded by inmates who were placed in a maximum security prison for a reason. Because his ability to carry out his work duties safely depended to some extent upon those inmates' respect for him, Holt's treatment of Grimmett and the rumors circulating around the prison about Grimmett, which are arguably related to that treatment, also carry safety implications that could also change the conditions of Grimmett's employment.[1]

The court uses the word "could" because many factors feed into a determination regarding element four's "severity" – factors that could change based on Holt's demeanor, tone, physical size, surroundings, character, background, sexual preferences, history of sexual activity with co-employees, and further, the atmosphere of the prison, and the inmates' reaction to the sexual preferences of the prison employees, etc. These factors are not all clear from reading the

---

[1] As the ADOC states in its brief, Grimmett's claim – that Holt started the rumors he is gay – based on what inmates and Carnathan told him is hearsay but could be admissible at trial via testimony from the correct witness. However, regardless of whether Holt is responsible for the rumors, the fact that these rumors were circulating at the prison arguably affects the severity of Holt's verbal harassment of him, in light of the content of that harassment.

evidence submitted to the court at this summary judgment stage: Grimmett's deposition, a Warden's affidavit, an investigative report, wage reports, personnel evaluations, etc. However, Grimmett testified that the way Holt treated him and the rumors circulating about Grimmett, whether they came from Holt himself or were generated from Holt's treatment of him, caused the inmates to lose respect for him. Once again, the court must view these factors in the light most favorable to Grimmett, and doing so raises genuine issues of material fact that must be left to a jury to resolve.

The court must measure the severity of the alleged abuse by two standards: by a reasonable person standing in Grimmett's shoes and by Gimmett's subjective standard. The court finds that Grimmett meets the subjective standard of severity. Grimmett complained to management at both facilities about the sexual harassment. Indeed, when he was at the Donaldson facility, Grimmett subjectively felt that the conduct was severe enough for him to request and welcome transfer to another facility, even if that transfer caused him to drive *more than an hour farther* each day to and from work.

As to the objective severity determination, the court finds that it is fact-driven and that genuine issues of material fact exist. Therefore, viewing the facts in the light most favorable to Grimmett, the court FINDS that those facts establish the fourth element; the alleged abuse *from the Donaldson correctional facility* was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

The fifth element provides a means of holding the employer liable. In the instant case, as discussed earlier, the court has determined that only the harassment at the Donaldson facility was severe enough to establish the fourth element of his *prima facie* case. However, in an abundance

of caution, the court will address the fifth element and the basis of holding the employer liable for the adverse employment actions at both facilities.

"The basis of an employer's liability for [a] hostile environment ... depends on whether the harasser is the victim's supervisor or merely a coworker." *Huston v. Procter & Gamble Paper Products Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (addressing an employer's liability for a sexually hostile work environment); *see Lewis v. U.S. Dep't of Labor Admin. Review Bd.,* 368 F. App'x 20, 31 (11th Cir. 2010) (quoting this passage from the *Huston* decision). "An employer 'is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1278 (11th Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Therefore, when a supervisor takes tangible employment action against the victim, the employer will be held strictly liable for the hostile work environment. *Id.* Where, however, "an employee has established a claim for vicarious liability but where no tangible employment action was taken, a defending employer may raise [an *Ellerth/Faragher]* affirmative defense to liability or damages: '(a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Miller*, 277 F.3d at 1278 (quoting *Faragher*, 277 F.3d at 807).

As these cases provide, the court must determine in the instant case whether Grimmett's supervisor(s) took a tangible employment action against Grimmett, and if one or both did, the employer is strictly liable for the hostile work environment. The evidence presented to the court

indicates that the "harassing" supervisors themselves took no tangible employment action against Grimmett. Rather, Grimmett claims to have received *intangible* adverse employment actions: he receive an unwanted transfer from the St. Clair facility to the Donaldson facility that he did not request or afterward embrace, and he received harassment from his supervisor at the Donaldson facility. Neither Mitchell nor Holt fired him, demoted him, or docked his pay. Further, in his deposition testimony, Grimmett acknowledges that any disciplinary action he received at these facilities was unrelated to the sexual harassment. Finally, no evidence exists that the management at the St. Clair or Donaldson facilities took a tangible adverse employment action against Grimmett. Therefore, the ADOC is not strictly liable for the hostile work environment.

However, the absence of strict liability does not equate to the absence of employer liability at all; Grimmett may establish employer liability by showing the existence of a hostile work environment created by his supervisor's intangible adverse employment action(s) as long as the ADOC does not raise a successful *Faragher* defense. In attempting to raise such a defense, the ADOC asserts that it exercised reasonable care in response to the complaints of harassment. As to the transfer from St. Clair to Donaldson, the court agrees that the transfer appears to be an effort to exercise reasonable care to correct the situation. The transfer occurred after a fairly thorough investigation, involving taped interviews, resulted in a finding of no support for the harassment allegations. While separating Grimmett from his St. Clair supervisor appears to be a reasonable solution to the conflict between the two, given the investigation's finding, disciplining or removing the supervisor would be inappropriate. Rather, placing Grimmett in the same position with the same pay under a male supervisor at another facility would appear to be imminently reasonable and fair to both employees, with the negative factors being the increased

security level of the Donaldson prison and the close relationship between the two supervisors. Grimmett has produced no evidence that he communicated with management *before* the transfer to Donaldson that the security level of the new facility was undesirable or unacceptable, or that, despite his complaints about Mitchell, he would prefer working under her rather than transfer to the maximum security facility. The court finds that the ADOC has established a *Faragher* defense as to the transfer of Grimmett from St. Clair to Donaldson.

Whether the ADOC exercised reasonable care after Grimmett's complaints of sexual harassment at the *Donaldson* facility is not as clear. The evidence presented unfortunately does not include the investigative report from that facility, and the court finds that absence troubling. The facts as presented provide a conclusory finding as a result of the investigation – that the harassment complaint was unfounded – but little or no information about what the investigation included and upon what the conclusion was based. According to Grimmett's testimony, Warden Hetzel advised him that his witness, Ms. Carnathan, supported his claims of harassment when the Warden talked to her on the phone. Because Grimmett heard only Hetzel's side of the conversation and not Carnathan's, Hetzel's recounting of what Carnathan said is hearsay. In any case, the Donaldson authorities – both Warden Hetzel and Warden Price, his successor – failed to grant Grimmett's requests for a transfer communicated in January of 2011 and repeated in April of that year. The ADOC rather blithely notes that he received a transfer, as he requested, but the evidence reflects that the Donaldson officials can take no credit for the transfer to Alex City and cannot claim that the transfer was a result of any exercise of reasonable care to prevent or correct the harassing behavior. Rather, when his request to transfer was ignored, then denied, Grimmett eventually took matters into his own hands and engineered the transfer – effective ten

months after he requested it – by going outside the Donaldson authorities and applying himself for the position at the Alex City facility.

In sum, the ADOC has presented general, non-specific evidence that the Donaldson authorities initiated an investigation into Grimmett's complaints, but it has provided no evidence upon which the court can determine that the investigation and its conclusion represent an exercise of reasonable care to prevent or correct harassing behavior. And, as noted above, because the Donaldson authorities denied Grimmett's request for a transfer, the ADOC cannot point to the transfer *he* himself engineered as evidence of *its* exercise of reasonable care. Therefore, the court finds that, as to the complaints at the Donaldson facility, the ADOC has not established a *Ellerth/Faragher* defense, because it has not presented evidence that it exercised reasonable care to prevent and correct harassing behavior, and it has not presented evidence that Grimmett failed to take advantage of any preventive or corrective opportunities.

Therefore, the court FINDS that, viewing the evidence in the light most favorable to Grimmett, the *pro se* Plaintiff, he has established his *prima facie* case of hostile work environment based on sexual harassment by his supervisor *at the Donaldson facility*. The motion for summary judgment is due to be DENIED as to this claim.

**B. Hostile Work Environment based on Religious Discrimination**

Grimmett also claims that the ADOC created a hostile work environment based on religious harrassment. To establish such a claim, Grimmett must establish the following elements: (1) that he belongs to a protected class; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on his religion; (4) that the harassment was sufficiently severe and pervasive to alter the terms of his employment and create an abusive

working environment; and (5) that a basis exists for holding the employer liable. *See MackMuhammad v. Cagle's, Inc.* 279 F. App'x 801, 804-05 (11th Cir. 2010) (applying the same analytical framework to religion-based hostile work environment claims as the court applied to claims of sexual or racial harassment); *see also Johnson v. AutoZone, Inc.,* 768 F. Supp. 2d 1124, 1151-52 (N.D. Ala. 2011) (listing those elements).

In arguing that Grimmett has not his *prima facie* case on this claim, the ADOC once again focuses on the fourth element – the severe or pervasive element – and asserts that Grimmett has failed to present evidence to establish that element as a matter of law. As to the claim for hostile work environment based on religious harassment, the court agrees.

In the instant case, the only evidence of religious harassment and discrimination Grimmett has presented is that when he made reference to God with remarks such as "God willing" or "thank God," Mitchell made responses such as "God has nothing to do with this or that." Unlike the alleged sexual harassment, the alleged religious harassment occurred only during the four months when Grimmett worked at the St. Clair facility and did not continue when he moved to other facilities.

As a Pentacostal Christian, Mr. Grimmett found Mitchell's remarks offensive, and they were perhaps rude, insensitive, and uncivil. However, as discussed above, Title VII is not a "general civility code" and does not attempt to regulate mere offensive utterances in the workplace when those utterances are not so severe and pervasive that they alter the terms and conditions of employment. Grimmett has provided no evidence that this particular religious harassment, if it qualifies as harassment, altered the terms or conditions of his employment or was otherwise anything but an ordinary workplace tribulation. Accordingly, the court FINDS

that the motion for summary judgment is due to be GRANTED as to the claim for hostile work environment based on religious harassment.

**C. Retaliation**

Grimmett also claims that the ADOC retaliated against him for complaining of sexual harassment. His EEOC charge checks "retaliation" and references the following actions after he complained of sexual harassment: his transfer to another facility, and, noting his new supervisor's awareness of his complaints against his old supervisor, the new supervisor's subsequent sexual harassment of him, calling him "my boy," "pimp," etc.

To evaluate a plaintiff's claim of retaliation brought pursuant to Title VII and § 1981 where no direct evidence of discriminatory retaliation exists, a court must follow the framework set out in the decisions of *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802-03 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). That framework first requires a plaintiff to prove a *prima facie* case of discrimination; he must establish that "he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Butler v. Ala. Dep't. of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . .[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

In its brief in the instant case, the ADOC acknowledges that Grimmett complained about sexual harassment at both St. Clair and Donalson but claims that he cannot establish the last two elements of his *prima facie* case because no adverse employment action occurred as a result of Grimmett's complaints. It asserts that transfer to the Donaldson facility was not adverse because it was closer to Grimmett's Birmingham home, and further, that the transfer occurred for a legitimate, non-discriminatory reason: protecting Grimmett while his complaints were being investigated. As to Holt's harassment, it asserts that the harassment at Donaldson does not qualify as an adverse employment action because Grimmett was not demoted, fired, and lost no pay. The court will address these arguments.

*Transfer to Donaldson*

As to the transfer from St. Clair to Donaldson, the ADOC dismisses it as an adverse employment action because the Donaldson facility was closer to his Birmingham home, because Grimmett received the same position with the same pay at Donaldson, and because management's intention was to protect Grimmett during the investigation of his sexual harassment complaint. Despite ADOC's "closer to home" argument, the evidence reflects that the two facilities were, for all practical purposes, approximately the same distance away from Grimmett's home. While the ADOC's statement of its intention to protect Grimmett may be true and could be raised as a legitimate non-discriminatory reason for the transfer, its intention – however honorable – does not mean that the tranfer was not adverse to Grimmett. The fact remains that Grimmett did not request the transfer, and he testified that he did not want it.

Further, the facilities were not identical: the Donaldson facility was a maximum security prison, a higher level of security than at St. Clair with attendant safety and discipline worries

based on the different make-up of the prison population. Indeed, shortly after he arrived at the Donaldson facility, Grimmett did make a formal request to transfer away from Donaldson and into a work release facility that was on the opposite end of the security scale, supporting his claim that he was unhappy with the transfer to Donaldson and that the security level of the facility where he worked was important to him.

In addition, the ADOC insists that the transfer was not an adverse employment action because Grimmett did not lose his job or his position and his pay rate remained constant. However, to be materially adverse, an action need not be a dismissal, demotion, or docking of pay. For example, the Supreme Court has stated that reassignment of duties so that an employee spends more time performing arduous duties and less time performing easier ones could be an adverse employment action. The key is not whether the employee suffers a monetary deficit or a job or position loss but whether the action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.

In the instant case, a jury could find that a reasonable worker would prefer working in a lower security prison than a maximum security prison and that the action of transferring Grimmett to a maximum security prison as a result of a sexual harassment complaint when the worker did not request it would have dissuaded a reasonable worker from making such a complaint. Accordingly, the court finds that, viewing the evidence in the light most favorable to Grimmett, the transfer falls within the definition of an adverse employment action. Further, the court finds that a causal connection exists between the complaint and the transfer, and, indeed, the ADOC does not deny that connection but only states that the intention behind the connection

was to protect, not to discriminate. Thus, the court FINDS that Grimmett has established his *prima facie* case of retaliation as to the action of transferring Grimmett to the Donaldson facility. Having established that case, the burden shifts to the ADOC, which must articulate a legitimate, non-discriminatory reason for the alleged retaliatory act. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1162-63 (11th Cir. 1993) (applying the *McDonald Douglas* framework to a Title VII retaliation case). As stated previously, it has done so, citing the protection of Grimmett during the pendency of the investigation into his complaints, which the court finds to be legitimate.

Because ADOC has articulated a non-discriminatory reason, the burden rests upon Grimmett to show that the reason was a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802. As to the issue of pretext, the court "'must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 892 (11th Cir. 2011) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Grimmett has not met his burden of establishing that this legitimate, non-discriminatory reason was pretext for discrimination by presenting any evidence to the contrary. The transfer was to the same position, for the same pay, and under a male supervisor, which would appear to represent a reasonable response to protect Grimmett in light of his complaint. Grimmett has presented no evidence, and, indeed, no evidence exists in the record, that Grimmett advised the ADOC management *prior to the transfer to Donaldson* that he did not want the transfer, that he did not want to work in a maximum security prison, or that he would prefer to continue working at St. Clair rather than transfer to a maximum security prison. Further, he has not otherwise

provided evidence of inconsistencies, contradictions, weaknesses, or implausibilities in the ADOC's position or actions as to this particular transfer, which would show that it was pretext for discrimination. Absent any evidence of pretext, the court further FINDS that summary judgment is due to be GRANTED in favor of the ADOC as to the retaliation claim based on the transfer from St. Clair to Donaldson.

*Holt's Harassment*

A second adverse action is what the ADOC calls Grimmett's "mistreatment" at the hands of his supervisor Holt – constantly taunting him with terms such as "my boy" "sissy" and "bitch" in a maximum security prison context. Although Holt was Grimmett's supervisor at the Donaldson facility, not at St. Clair where Grimmett complained of Mitchell's sexual harassment, Grimmett's testimony establishes that prior to the commencement of this mistreatment, Holt knew about Grimmett's complaints regarding Mitchell; Holt had a close enough relationship with Mitchell that Holt characterized her as his best and favorite steward, and he communicated to Grimmett his displeasure about the complaints. While not a tangible employment action, Holt's sexual taunting of Grimmett in the maximum security prison is an action that a jury also could have found would dissuade a reasonable worker from complaining of sexual harassment.

Accordingly, the court FINDS that Grimmett has established his *prima facie* case of retaliation as to Holt's mistreatment of him at the Donaldson facility. Because the ADOC presents no legitimate, non-discriminatory reason for Holt's mistreatment, Grimmett has no burden of presenting evidence of pretext as to that action. Therefore, the motion for summary judgment is due to be DENIED as to that claim of retaliation.

**V. CONCLUSION**

In sum, for the reasons stated above, the court FINDS as follows:

- As to the claim for a sexually hostile work environment, the motion for summary judgment is due to be DENIED; Grimmett has established his *prima facie* case of hostile work environment based on sexual harassment by his supervisor at the Donaldson facility.
- As to the claim for hostile work environment based on religious harassment, the motion for summary judgment is due to be GRANTED.
- As to the claim for retaliation, the motion for summary judgment is due to be GRANTED IN PART and DENIED IN PART; the court WILL GRANT the motion regarding retaliation based on the action of transferring Grimmett to the Donaldson facility, and WILL DENY the motion regarding retaliation based on Holt's alleged mistreatment of Grimmett.

The court will enter a simultaneous, consistent Order.

Dated this 25th day of June, 2013.

Karon O. Bowdre

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE